STATE, Respondent, v. BAKER, Appellant.

(205 N. W. 666.)

(File No. 5729. Opinion filed October 28, 1925.)

1. **Rape—Evidence—Evidence Held Sufficient for Jury.**

   In prosecution for rape of female under age of 18 years, evidence, though slight and unsatisfactory, held sufficient for jury.

2. **Criminal Law—Trial—Jury—Asking Jurors Who Might Have Heard Alleged Remarks of Prosecutrix to Defendant to Raise Hand Held Not to Cure Error in Remarks.**

   In 'rape prosecution, where it was alleged that during recess, and while portion of jury were still in courtroom, prosecutrix held up her baby and said to defendant, "Here is your sonny; take him; * * * he looks like you," calling in of jury and asking them if they had heard the remark, and requesting jurors that heard it to raise their hand, held not to cure error in the remark, as fairer course required court to ask each juror if he had heard it; the whole record showing that jury was prejudiced against defendant.

3. **Criminal Law—Opening Statement—Trial—Appeal and Error— Bringing Out Facts Inadmissible in Evidence in Opening Statement and in Direct Examination of Prosecutrix Held Prejudicial.**

   In prosecution for rape of female under age of 18 years, despite fact that prosecution knew it could not connect defendant with acts of his mother and aunt in spiriting prosecutrix away, and that evidence thereof was inadmissible, bringing such fact to jury's attention in opening statement and in direct examination of prosecutrix held prejudicial to defendant.

4. **Criminal Law—Trial—Jury—Error in Overruling Objection to Question to Witness Held Not Cured by Subsequent Striking of Answer and Instruction Thereon.**

   In rape prosecution, error in overruling objection to question to defendant's mother on cross-examination as to whether she was not being prosecuted for adultery, and permitting her to answer, held not to have been cured by subsequent striking of answer and admonishing jury not to be influenced thereby, where there was but slight evidence of guilt. .

Appeal from Circuit Court, Hutchinson County; HON. ROBERT B. TRIPP. Judge.

Elsworth Baker was convicted of rape of a female under age of 18 years, and he appeals. Reversed and remanded for new trial.

*Frank Vincent,* of Alexandria, and *E. E. Wagner,* of Mitch-
ell, for Appellant.

*Buell F. Jones,* Attorney General, and *Bernard A. Brown,*
Brief Attorney, of Pierre, for the State.

(1) To point one of the opinion, Respondent cited: State
v. Dachtler, 43 S. D. 407; State v. Fehr, 45 S. D. 634.

(3) To point three, Appellant cited: State v. Kaufmann,
22 S. D. 433; Vickers v. United States (Okla.), 98 Pac. 467;
Heller v. People (Colo.), 43 Pac. 124; State v. Fournier (Minn.),
122 N. W. 329.

GATES, J. Defendant was convicted of rape as defined in
subdivision 1, § 4092, Rev. Code 1919, viz., "where the female is
under the age of eighteen years." He appeals from the judgment
and an order denying new trial.

[1] The evidence tends to show that on July 4, 1923, de-
fendant, aged 18, and prosecutrix, aged 17, met at a dance at a
celebration at Milltown, Hutchinson county. They had been at-
tentive to each other for about two years, but had been estranged
for about the last three months. At about 10 o'clock in the eve-
ning they left the dance hall and got into the front seat of a
Ford touring car. Prosecutrix says they were there about an
hour when they had sexual intercourse, and thereafter remained
in the car about half an hour. Defendant, as a witness, denied
ever having sexual intercourse with prosecutrix. His testimony
and that of several witnesses tend to show that they were in the
car only a few minutes, and that an act of sexual intercourse
would have been impossible, in view of the location of the car and
the surrounding people. She testified at the preliminary examina-
tion that the act took place under the steering wheel, but upon
the trial she testified that she was out from under the wheel when
the act took place. She also testified that two weeks after the
act she was pregnant, and so notified defendant. This he denied.
In December, 1923, the father of prosecutrix went to the home
of defendant's mother with Mr. Vincent, one of defendant's at-
torneys, and a conversation ensued between them and defendant
and his mother. Prosecutrix's father testified that at that inter-
view defendant admitted he had sexual intercourse with prosecu-
trix on July 4, and he testified that arrangements were made that

the children were to marry. The other three participants denied that defendant made the above admission, and testified that he only admitted that he had been with prosecutrix on July 4, and that the only talk of marriage was by prosecutrix's father. On April 4, 1924, prosecutrix gave birth to a child. Defendant was at the time of the incident a high school student, and his good reputation was testified to by a number of leading citizens of his home town. The evidence on behalf of the prosecution was, in our opinion, slight and unsatisfactory, but was sufficient to go to the jury, and, however contrary to our conception of the truth, we cannot usurp the functions of the jury by setting aside the verdict and judgment upon the ground that the evidence was insufficient to sustain the verdict.

[2] One incident at the trial is relied on, among others, as tending to show that the verdict was unfairly arrived at. On the part of defendant the attention of the court, in the absence of the jury, was called to the alleged fact that during recess, while defendant was walking down the aisle of the courtroom, and while the jurors, or a portion of them, were still in the courtroom, the prosecutrix held up the baby and said to defendant in a loud voice:

"Here is your sonny. Take him. I should think you would turn up your nose at him. He looks like you."

This was disputed by prosecutrix's father, who said the baby was held by his wife, and that she said to him, and not to defendant, "Here is your sonny." He also testified that in the family they referred to the child as "sonny." Thereupon the court called the jury in and the trial judge said:

"Gentlemen, immediately following your being excused for this recess there was some remark made here in the courtroom by somebody there on the south side respecting the child. Now, there is a dispute as to whether you heard it, or whether you did not hear it. I will ask the gentlemen of the jury that heard any remark in regard to the child to raise their hands. It appears that there was no member of the jury that heard the remark. If anything has come to your ears, gentlemen, in regard to this remark to which I have referred, I want to say to you, and it is my duty to say, that you are directed not to attach any importance to it, or to be influenced in any way whatever by it in your consid-

eration of the case. You should be influenced only by what you hear from the witness stand, and what you have observed with reference to these witnesses. Now, please remember that, gentlemen, if anything comes to your ears in regard to the matter, that should not influence you any more than it will influence me in my consideration and action in the case."

It is quite apparent to us that, if the jury was prejudiced against defendant, none of the jurors would have raised their hands at the court's suggestion. We think the fairer course would have been for the trial court to have asked each juror personally if he had heard the incident. In consideration of the whole record, we are impressed with the view that the jury was decidedly prejudiced against defendant.

[3] In the opening statement the special prosecutor said:

"We expect to prove * * * that afterwards the mother of Elsworth Baker furnished her money, and that her sister—that is, the sister of the mother of Ellsworth Baker—took this girl and went to Omaha, without any knowledge on the part of the parents, and there kept her hid until the father later discovered where the girl was."

Thereafter in the direct examination of the prosecuting witness the following occurred:

"Q. You left home in the first part of December, and where did you go? (Objected to as immaterial.)

"Mr. Danforth: It simply leads up to show the family connection.

"Mr. Wagner: We object to this.

"The Court: Unless he is connected with it.

"Mr. Danforth: Sort of corroborating.

"The Court: If in this case, as I always do, tentatively state to attorneys, with a view to rulings and to get my bearings in regard to the case, I might as well speak plainly of it, because at the instance of the mother she went to Omaha.

"Mr. Danforth: I think that is a fact, your honor. I do not know as we can connect the boy with that."

The prosecution apparently knew that it could not connect the claimed action on the part of defendant's mother and aunt with the defendant. That being true, any such evidence was wholly inadmissible. Yet by the statement and the conduct of the prose-

cution in this case the fact, if it was a fact, that defendant's mother and aunt spirted the girl away was brought to the attention of the jury fully as emphatically as it could have been by direct testimony.

[4]    Also on cross-examination of the mother one of the first questions asked by the prosecution was:

"You are being prosecuted for adultery now in Hanson county, are you not?"

This question was, of course, highly improper. Before objection could be interposed the witness answered:

"Yes; by you."

The defendant then moved to strike out the answer, and if that motion had been immediately granted, and the jury promptly and properly admonished, the error might have been cured, but after the motion to strike was made the special prosecutor said:

"It tests the veracity of this woman."

Thereupon the trial court indicated that it also believed the question a proper one, and the court said:

"I say to counsel it is my conviction that the presumption is that a jury is not acquainted with every person that comes on the witness stand, and it is proper, within reasonable limitations, that they may know who it is that is testifying. I think we will take an answer to this question."

Counsel for defendant then stated that he desired to be fair with the court, and he believed it was reversible error to permit the answer to stand. The special prosecutor still insisted upon the matter, but the court finally determined to grant the motion to strike out the answer, and, being requested to admonish the jury, did so in the following words:

"I will say to the jury that in the trial of these cases there are frequently difficult questions that arise and matters that are not clearly settled. I tell counsel that I think the safer course will be to sustain this objection, so that this answer you have heard in your consideration of the case should not in any way influence your judgment or verdict in the case, and what may have passed over the table between counsel that you have heard should also be regarded in the decision of the case."

The net result of the situation was that the information was put before the jury. The court indicated that it was proper for

the jury's consideration but, fearing it might constitute reversible error, the answer was stricken, and the objection to the question sustained.

In view of the unsatisfactory evidence offered on behalf of the prosecution, and the serious doubt in our minds whether defendant was guilty of the crime charged, we are of the opinion that the matters referred to must have poisoned the minds of the jurors against defendant, with the result that a fair and impartial trial has been denied him.

The judgment and order denying new trial are reversed, and the cause is remanded for a new trial.

Note.—Reported in 205 N. W. 666.   See, Headnote (1), American Key-Numbered Digest, Rape, Key-No. 57(1), 33 Cyc. 1486; (2) Criminal Law, Key-No. 659, 16 C. J. Sec. 2059; (3) Criminal Law, Key-No. 706, 16 C. J. Secs. 2226, 2229; (4) Criminal Law, Key-No. 1168(5), 17 C. J. Secs. 3666, 3667.